UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**,
               Plaintiff,

vs.                                Case No. 06-20185-05

**ALSEDDRICK DEWUNN WEST**,           **HON. VICTORIA  ROBERTS**
               Defendant.

_____/

**ELIZABETH A. STAFFORD** (P48866)
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9692

**JOHN F. ROYAL** (P27800)          **JENNIFER HERNDON** (Missouri Bar No. 37921)
Co-counsel for Defendant         Co-counsel for Defendant
The Ford Building               224 N. Highway 67, Ste. 122
615 Griswold St., Suite 1724       Florissant, Missouri 63031
Detroit, MI 48226              (314) 280-4734
(313) 962-3738

_____/

## MOTION TO SUPPRESS FRUITS OF ELECTRONIC SURVEILLANCE OBTAINED PURSUANT TO TRACKING ORDER NO. 04 US00096-P, AND REQUEST FOR AN EVIDENTIARY HEARING

NOW COMES the Defendant, ALSEDDRICK DEWUNN WEST,  by and through his

attorneys,  John F. Royal and Jennifer Herndon, and respectfully moves this Honorable Court for

the entry of an Order suppressing from the evidence in the trial of this cause any and all fruits of the

electronic surveillance conducted pursuant to Tracking Order No. 04 US00096-P , for the following

reasons:

     1.      The Defendant Alseddrick West, is charged in a one-count  Indictment returned on

April 4, 2006 with Conspiracy to Use Interstate Commerce Facilities in the Commission of Murder-

for-Hire, in violation of 18 U.S.C. Sec. 1958.

     2.      Mr. West believes that it may be the intention of the government in this case to

introduce into evidence at the trial of this case certain tape recordings and other fruits of an Order

authorizing Electronic Surveillance which was issued in connection with the investigation of this case, and is identified as Tracking Order No.04 US00096-P. This Order was issued on November 4, 2005 by the Honorable Bernard A. Friedman of this Court, and authorized electronic surveillance of telephone number 313- 215-5940; the Order was effective for a period of 30 days.

3.    This motion is supported by Sealed Exhibit 1, which is being filed together with three other sealed exhibits, which pertain to the electronic surveillance conducted as part of the government's investigation of this case. (Sealed Exhibits 2 and 3 are Affidavits which were incorporated by reference in Sealed Exhibit 1; Sealed Exhibit 4 is the Order partially unsealing these affidavits so that the Government could disclose them during discovery in this case). These exhibits are all being filed under seal because the Order granting the government's motion to unseal these documents, which was entered by the Honorable Bernard A. Friedman of this Court on May 2, 2006 under Tracking No. 04US00096-Z (Sealed Exhibit 4) is limited in scope. This Order unseals the relevant documents pertaining to the electronic surveillance only to the defendants and defense counsel for a limited purpose. The Order provides that:

> defendants and defense counsel obtaining such disclosure, shall not disclose the application, order, and contents of intercepted communications to any other person, except as is necessary for the preparation of the defense of this case, absent further order of this court;
> (Sealed Exhibit 4).

Therefore, to attach the documents pertaining to the electronic surveillance to this motion would violate Judge Friedman's Order; hence these documents must be filed under seal.

4.    Sealed Exhibit 1 consists of a packet of five documents pertaining to Tracking Order No. 04 US00096-P, and includes: the government's Application for authorization to conduct electronic surveillance of telephone number (313) 215-5940; Ex. A, the Department of Justice's (DOJ) Order designating a Deputy Assistant Attorney General to approve applications for electronic surveillance;

Ex. B, the DOJ Memorandum of Authorization approving the instant application; Ex. C, the Affidavit in support of this Application for Electronic Surveillance; and Judge Friedman's Order dated November 4, 2005, granting the application.

5.      Upon information and belief, a significant portion of the evidence which is to be offered at trial against Defendant Alseddrick Duwann West  was obtained as a result of the interception of electronic and wire communications under the authority of Judge Friedman's Order in No. 04 US00096-P.

6.      Defendant Alseddrick Duwann West  is an aggrieved person with respect to the interceptions described herein, as defined in 18 U.S.C. §2510(11), and is entitled to move for suppression of the communications intercepted thereunder under the provisions of 18 U.S.C. §2518(1)(a).

7.      Mr. West's ability to fully present his arguments with respect to the application and affidavit submitted to obtain the Wiretap Order challenged in the instant motion is handicapped because the government has only provided a redacted copy of the affidavits in question (Sealed Exhibits 1, 2 and 3);  in addition, the government's application requesting authority to electronically intercept telephone number 313- 215-5940 relies heavily on evidence allegedly obtained through a previous Order which allegedly  authorized the gathering of toll records and pen register data from the same phone number, 313-215-5940.  This information is described in paragraph 22 and paragraphs 39-40 of the instant Affidavit (Sealed Exhibit 1, Affidavit, Exhibit C, pars. 22, 39-40). The documents pertaining to the authority to conduct pen register surveillance of (313) 215-5940 were not provided in discovery.  Hence, Mr. West is separately moving for issuance of an Order requiring the government to proved the court and defense counsel with unredacted copies of the relevant Affidavits, as well as with the documents authorizing the Pen Register surveillance, and the

records of results of the Pen Register surveillance, so that Mr. West can supplement this motion and memorandum in support with arguments based upon the full scope of the information presented to the Judge who issued this wiretap Order.

8.      Mr. West submits that the Order issued approving the electronic surveillance under Tracking No. 04 US00096-P  was and is constitutionally and lawfully defective, as an examination of the Affidavit submitted by the government to obtain the application (Exhibit 1, Affidavit, Exhibit C) indicates that at the time of this application, the government did not have probable cause to believe that information of an incriminating nature would be discovered through the use of electronic surveillance.

9.      The wire communications intercepted under the purported authority of Tracking No. 04 US00096-P were "unlawfully intercepted" within the meaning of 18 U.S.C. §2518(10)(a)(I), because the orders of authorization or approval were insufficient on their face, within the meaning of 18 U.S.C. §2518(10)(a)(ii), and because the interceptions were not made in conformity with the orders of authorization or approval, within the meaning of 18 U.S.C. §2518(10)(a)(iii), because the application and the affidavit in support was insufficient to show, and each order improperly found, that normal investigative procedures had been tried and had failed, or reasonably appeared to be unlikely to succeed if tried, or to be too dangerous.

10.      In addition, the government has failed to provide in discovery with respect to Tracking Order No.04 US00096-P the records, such as Title III Line Sheets and Progress Reports, showing any efforts to minimize the intrusion of the electronic surveillance of 313-215-5940, as required by Title III .  Mr. Alseddrick West is therefore moving separately for discovery of such records.  However, upon information and belief, Defendant Alseddrick West believes that the government failed to reasonably minimize the intrusion into conversations in violation of the

4

Wiretap Order and 18 U.S.C. 2518 (5).

11.    The Defendant concurs in and incorporates by reference to the extent applicable the Motion to Suppress Title III Wiretaps or, in the Alternative, for an Evidentiary Hearing, and the Memorandum which has been filed in support of that Motion by co-defendant Roy West (Record Entry documents 97 and 98).

12.    This motion is supported by the attached Memorandum of Law, which is incorporated herein by reference.

WHEREFORE, Defendant Alseddrick Duwann West respectfully requests that this Honorable Court enter an Order suppressing from the evidence herein the electronic and wire communications so unlawfully intercepted, together with any and all fruits thereof, and any evidence gained through the exploitation of such unlawfully intercepted communications, or, in the alternative, that the Court conduct an Evidentiary Hearing in this matter.

Respectfully submitted,

s/John F. Royal
Co-Counsel for Defendant
615 Griswold Street, Suite 1724
Detroit, MI 48226
Phone: (313) 962-3738
E-mail: johnroyal@ameritech.net
P27800

s/Jennifer Herndon
Co-Counsel for Defendant
224 N. Highway 67, Ste. 122
Florissant, Missouri 63031
Phone:  (314) 280-4734
E-mail: jenifer@ix.netcom.com
DATED:  July 18, 2008                                  (Missouri Bar No. 37921)

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**UNITED STATES OF AMERICA**,
       Plaintiff,

vs.                          Case No. 06-20185-05

**ALSEDDRICK DEWUNN WEST**,        **HON. VICTORIA ROBERTS**
       Defendant.

_____/

**ELIZABETH A. STAFFORD** (P48866)
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9692

**JOHN F. ROYAL** (P27800)         **JENNIFER HERNDON** (Missouri Bar No. 37921)
Co-counsel for Defendant         Co-counsel for Defendant
The Ford Building                224 N. Highway 67, Ste. 122
615 Griswold St., Suite 1724       Florissant, Missouri 63031
Detroit, MI 48226              (314) 280-4734
(313) 962-3738

_____/

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO SUPPRESS FRUITS OF
## ELECTRONIC SURVEILLANCE
## OBTAINED PURSUANT TO TRACKING ORDER NO. 04 US00096-P, AND
## REQUEST FOR AN EVIDENTIARY HEARING.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS FRUITS OF ELECTRONIC SURVEILLANCE OBTAINED PURSUANT TO TRACKING ORDER NO. 04 US00096-P AND REQUEST FOR AND EVIDENTIARY HEARING.**

### Statement of Facts

The facts are set forth in the Motion to Suppress Fruits of Electronic Surveillance, pursuant to Tracking Order No. 04 US 00096-P, which is attached hereto. Further Facts will be referenced in the Arguments section of this Memorandum.

### Arguments

This motion pertains to the fruits of the electronic surveillance conducted pursuant to Tracking Order No.04 US00096-P. This Order was issued on November 4, 2005, by the Honorable Bernard A. Friedman of this Court, and authorized electronic surveillance of the telephone using number (313) 215-5940; the Order was effective for a period of 30 days.

**A.      Legal Background - Wiretapping and the Courts**

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §2510-2520, was enacted in response to the decision of the United States Supreme Court in Berger v New York, 388 U.S. 41 (1967) and the constitutional limitations upon electronic surveillance articulated in that decision. Although widely criticized from the outset as representing a marked erosion of individual rights, see, e.g., Schwartz, The Legitimization of Electronic Eavesdropping: The Politics of "Law and Order", 67 Mich.L.Rev. 455 (1969) (hereinafter "Schwartz"), the complex procedural requirements of the statute are an expression of a congressional intention to preserve and favor individual privacy, and it has been repeatedly held that "its provisions must be strictly construed in favor of privacy interests...." Carr, The Law of Electronic Surveillance, p. 2-50 (2nd Ed. 1986) (hereinafter "Carr"), and cases cited therein.

Nevertheless, under the aegis of Title III, the scope and depth of electronic surveillance has

grown markedly. Indeed, for the first ten years of the life of the statute, there was a significant question as to whether courts could authorize surreptitious entries to plant bugging devices, as is now commonly done. Dalia v United States, 441 U.S. 238 (1979). But what may have once appeared to have been unthinkable no longer causes so much as a raised eyebrow.

The proliferation and popularization of electronic surveillance has come about in no small measure at the expense of the strict construction of the procedural requirements of Title III. One of the principal early critics of Title III predicted that the "openhandedness" of the legislation would insure "that an alert investigator will always be able to tune in legally, at least for a limited period of time." Schwartz at 480. While such an effect seems clearly to be at odds with the expressed intention of the Congress, the fact of the matter is that few, if any, applications for electronic surveillance are rejected by the courts. The 1985 Administrative Office of the United States Courts Report on Applications for Orders Authorizing or Approval of Interceptions of Wire or Oral Communications states that in the period 1975-1985, some 7,108 applications for electronic surveillance orders were presented nationally, and that of these, only 10 were rejected.

These general comments are intended only to put the following arguments in perspective, and to underscore a number of observations. First, Title III represents a congressional recognition that strict procedural controls are a "precondition to the acceptability of any wiretapping at all," and less than strict enforcement of those controls must inevitably "throw Congress' entire conception into jeopardy." In Re: Evans, 452 F.2d 1239, 1243 (D.C. Cir. 1971). Because electronic surveillance represents the most dramatic sort of intrusion into individual privacy, because the barriers to untoward intrusion are so fragile, and so easily eroded, and because the procedural framework enacted by Congress to safeguard those barriers is to complex, challenges to electronic surveillance orders impose a "heavier responsibility" of judicial scrutiny than is demanded in the ordinary search

and seizure case.  United States v Kleva, 337 F.Supp. 557, 563 (D. Minn. 1971), rev'd other grounds, 465 F.2d 187 (8th Cir. 1972).  Finally, as Professor Carr has noted, "The right of conversational privacy can be protected only if courts demand strict satisfaction of the Constitution by the statute, and of the statute by law enforcement officers."  Carr at 2-52.

**B.**    **Probable Cause**

While the measure of what constitutes "probable cause" is probably no greater under Title III than it is in a conventional search warrant case, United States v Falcone, 505 F.2d 478, 481 (3rd Cir. 1974); United States v Giacolone, 853 F2d 470, 478 (6th Cir), cert. den. 488 US 910 (1988), the probable cause formulation which is required of an application for court authorization of electronic surveillance is somewhat more complex.  The statute requires a showing of probable cause to believe not only that "an individual is committing, has committed or is about to commit a particular offense" among those set forth in 18 U.S.C. §2518(3)(a), (b), (d).  Each of these probable cause requirements must individually be met before an electronic surveillance order may be properly issued.  United States v Armocida, 515 F.2d 29, 35 (3rd Cir. 1975).  The requirement that the affidavit demonstrate probable cause as to particular violations and facilities works to prohibit the use of electronic eavesdropping for "indiscriminate monitoring" or "strategic intelligence gathering," in which "such surveillance works from known criminals to unknown crimes."  Carr, 4-30, 31.

As is the case for a search warrant for premises, the information presented in the affidavit submitted in support of an application for wiretap authority must be judged on the totality of the circumstances in a "reasonable and common sense manner."  United States v Alfano, 838 F2d 158, 161 (6th Cir), cert den. 488 US 910 (1988).  A Judge or Magistrate's determination of probable cause will be upheld if there is a "substantial basis" for the probable cause finding.  United States v Lambert, 771 F2d 83, 93 (6th Cir), cert. Den. 474 US 1034 (1985).  Thus, for example, the Sixth

Circuit found that probable cause was not shown  where the only facts presented in support of the wiretap application was that a large number of telephone calls were received by a known bookmaker, no return calls were made, but there was no known connection between the telephone calls and any other suspicious activity.  United States v Algie, 721 F2d 1039, 1043 (6th Cir 1983).

Further, 18 U.S.C. Sec. 2518 sets forth substantive requirements which the government must meet in applying for wiretap authorization.  Subsection (1) requires:

> (b) ...[A] full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (I) details as to the particular offense that has been, is being, or is about to be committed; and © a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear by be unlikely to succeed if tried or to be too dangerous.  (Emphasis added).

For the reasons which follow, the Affidavit used to obtain the wiretap authorization in this case  failed to establish probable cause.

## C.     The Necessity for Interception

Even as refined by Title III, the requirement that probable cause be shown before a search may be authorized represents nothing more than an expression of the Fourth Amendment's proscription against "unreasonable" searches and seizures - a search is "reasonable" in the constitutional sense if it is predicated upon an appropriate showing of probable cause.  However, because of the extraordinary nature of the intrusion upon privacy represented by wiretapping, Congress incorporated in the statute not only an explicit definition of the showing of probable cause which must be made as a predicate to electronic surveillance, but also a requirement that a genuine need to engage in wiretapping be shown before it might properly be authorized.  The statute requires that each application contain, in addition to a showing of probable cause:

A full and complete statement as to whether or not other

4

> investigative procedures have been tried and failed, or why they
> reasonably appear to be unlikely to succeed if tried, or to be too
> dangerous.

18 U.S.C. §2518(1)©, and provides further that no order authorizing electronic surveillance may enter unless it contains a finding by the judge that such a showing has been made. 18 U.S.C. §2518(3)©.

The requirements of these last two subsections are related to the probable cause standards spelled out in the statute, and "manifest the intention of the framers of the statute to insure each wiretap would be not only reasonable but also necessary." United States v Perillo, 333 F.Supp. 914 (D.Del. 1971). The "necessity" requirement is a centerpiece of Title III, and integral to its protections. As the Ninth Circuit has held, its effect is to erect a "statutory presumption against granting a wiretap application" which may only be overcome "by showing necessity." United States v Ippolito, 744 F.2d 1482, 1486 (9th Cir. 1985).

The provisions of Title III in general, and the necessity requirement in particular are designed to insure that electronic surveillance is used "with restraint," and not "to be routinely employed as the initial step in criminal investigation." United States v Giodana, 416 U.S. 505, 515 (1974). The elaborate requirements of the statute were designed "to guarantee that wiretapping or bugging occurs only when there is a genuine need for it, and only to the extent that it is needed." Dalia v United States, 441 U.S. 238, 250 (1979); United States v Rice, 478 F3d 704, 710 (6th Cir 2007).

As observed above, the probable cause and "necessity" requirements of 18 U.S.C. §2518 are complementary, and are properly read together. Both allegations of probable cause and the showing of necessity required by the statute must be tied to the particular facts of the case. Need for the proposed electronic surveillance is only shown when the affidavit established "with specificity" that

it is necessary, under all of the facts, to achieve the legitimate goals of "this particular investigation." United States v Robinson, 698 F.2d 448, 453 (D.C. Cir. 1983).

Certainly, the showing of necessity, like other applications for permission to conduct searches of various kinds, is to be tested in a practical and common sense fashion, and against a general standard of reasonableness. However, the words of the Ninth Circuit Court of Appeals in United States v Kalustian, 529 F.2d 585, 589 (9th Cir. 1976), a leading case with respect to the "necessity" requirements of Title III, might well also be borne in mind:

> Within our prescribed limits, however, the utmost scrutiny must be
> exercised to determine whether wiretap orders conform to Title III.
> The Act has been declared constitutional only because of its
> precise requirements and its provisions for close judicial scrutiny.
> (Citations omitted)

The necessity requirement of the statute is designed to "assure that the government does not resort to wiretaps when less intrusive investigative techniques would suffice." United States v Rodriguez, 612 F.Supp. 718, 723 (Con. 1985). It has both a statutory and constitutional basis, and was enacted to insure that the statutory authority to wiretap would be used "only with restraint...." United States v Giordano, Ibid.

The showing of necessity must be tied to the particular facts of the case. Thus, it has been held that "[t]he affidavit must show with specificity why in this particular investigation ordinary means of investigation will fail." United States v Robinson, 698 F.2d 448, 453 (D.C. Cir. 1983) (emphasis in original). In this connection, it has repeatedly been held that "[b]ald conclusory statements without factual support are not enough." United States v Martinez, 588 F.2d 1227, 1231 (9th Cir. 1978). The affidavit must show how and why conventional investigative techniques, if they have been tried, have failed, or why such techniques are likely to be unproductive, or if alleged to be dangerous, in what specific way the danger may occur. United States v Spagnuolo, 549 F.2d

6

705, 710 (9th Cir. 1977).

As the legislative history of Title III makes clear, Congress envisioned "normal investigative procedures" as including:

> ... [1] standard visual or aural surveillance techniques by law enforcement officers [2] general questioning or interrogation under an immunity grant, [3] use of regular search warrants, and [4] the infiltration of conspiratorial groups by undercover agents or informants.  U.S. Code Cong. and Admin News, 2112, 2190 (1968).

As has become customary in Title III affidavits, the affidavit in the instant case attempts to address these categories, but, upon any thoughtful reading of the allegations as to necessity, it becomes clear that the affiant's claims are either mere conclusory blandishments, not tied to the facts of the particular investigation, or are contradicted by the very facts of that investigation itself.

**D.    The Affidavit submitted to obtain Wiretap Tracking Order No. 04US00096-P Failed to Establish Probable Cause.**

The wiretap order was issued based upon an affidavit which presented the issuing Judge with information allegedly obtained from two unidentified confidential informants, identified as Source One and Source Two )(Sealed Ex. 1, Affidavit, Ex. C,  pargs. 29-33).

Just as for search warrants for premises, the magistrate in reviewing the sufficiency of an affidavit requesting wiretap authority  is bound by the four corners of the affidavit.  United States v Weaver, 99 F3d 1372, 1378 (6th Cir 1996). The magistrate is required to carefully scrutinize the affidavit in order to determine the sufficiency of the information contained therein, and whether it amounts to probable cause.  The Affidavit must not be: "conclusory" or "bare bones."  Weaver, supra, at 1379-80.  To enable the magistrate to determine probable cause, the affidavit must provide sufficient factual information from which the magistrate may *personally draw the appropriate inferences and form the necessary conclusions.* Giordenello v United States, 357 US 480, 78 S Ct

1245, 2 LEd2d 1503 (1958). That is, as then-Justice Rehnquist stated for the Court in <u>Illinois</u> v

<u>Gates</u>, 462 US 213, 239, 103 S Ct 2317, 76 LEd2d 527, 549 (1983):

> Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.... [Moreover,]In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued. <u>Id</u>.

In analysing information supplied by confidential informants, the United States Supreme

Court in <u>Illinois</u> v <u>Gates</u>, 462 US 213, 76 LEd2d 527, 103 S Ct 2317 (1983) abandoned the prior

"two-pronged" approach, and substituted a "totality of the circumstances" analysis. However, the

Court specifically noted, Id., at 230, that "...[A]n informant's 'veracity,' 'reliability,' and 'basis of

knowledge' are all highly relevant in determining the value of his report." In evaluating the veracity

of an informant, the courts usually look at either the inherent credibility of the informant (often

established by a past track record of providing verifiable information) or the reliability of the

information provided on a particular occasion (often established by an investigation and search for

corroboration of the information provided).

The affidavit in this case does not even meet the "totality of the circumstances" approach in

its attempt to establish the credibility of the informants, and, hence, the credibility of the information

allegedly obtained from them. The affidavit seeks to establish the credibility and reliability of both

of the informants with boilerplate, conclusory language. Much of the language used to describe the

two informants is identical. Both informants are described as follows:

> The information provided by Source [One or Two] is regarded as reliable inasmuch as it has been corroborated by independent investigation and surveillance, as well as additional sources of information. Further, none of the information provided by Source [One or Two] has proven to be false. . . . .Source [One or Two] receives monetary compensation, not prosecutorial consideration, for the information Source [One or Two] provides.
> (Exhibit 1, Affidavit, Exhibit C, pargs. 29 and 32).

The affiant admits that both of these sources were motivated by monetary compensation. Id. Source One is alleged to have provided information leading to the arrest of 4 individuals and the seizure of illegal weapons and drugs. (Exhibit 1, Affidavit, Exhibit C, parg. 29). However there is no description of the type of information which Source One allegedly provided; there is no indication as to how recently this information was provided, or over what period of time, and there is no claim that any of the individuals arrested as a result of this information were in fact convicted of any crime. With respect to Source Two, the Affidavit claims that this informant provided information "which resulted in the conviction of several individuals on drug trafficking charges, as well as the seizure of illegal drugs." (Exhibit 1, Affidavit, Exhibit C, parg. 32). Here again, there is no indication as to what type of information was provided, or over what period of time, or whether the information was corroborated in any way.

In essence, the affiant simply asked the Judge who issued the Wiretap Order to accept his conclusory statements that these sources of information are credible and reliable. The affiant failed to provide the Judge with any significant facts in support of these assertions. In the absence of any facts explaining what aspects of the informants' information were corroborated, the Judge was turned into a mere rubber-stamp for the affiant.

The affiant then alleges that co-defendant Alvino Cornelius uses a cellular telephone with the number (313) 215-5940 (the target telephone). The affiant alleges that Source One last spoke with Mr. Cornelius at that number during the week of September 11, 2005, two months before the date on which wiretap authority was requested. (Exhibit 1, Affidavit, Exhibit C, parg. 30).

With respect to Source Two, the information this informant allegedly provided has been so heavily redacted that it cannot be determined if Source Two provided any information whatsoever regarding either co-defendant Alvino Cornelius, or phone number (313) 215-5940. (Exhibit 1,

Affidavit, Exhibit C, pargs. 31-33).

As noted, the instant Affidavit incorporates by reference two Affidavits which were submitted to obtain electronic surveillance authority for the telephone number of (313) 304-7959. (Exhibit 1, Affidavit, Ex. C, parg. 28). All three Affidavits were submitted by the same affiant, FBI Agent Peter Lucas. The first Affidavit submitted to obtain Wiretap Authority for 313- 304-7959 also refers to a Source One and Source Two. (Exhibit 2, pargs. 40-50). However, there is no allegation that this is intended to be a reference to the same individuals referred to in the Affidavit for the instant Wiretap Order. (Ex. 1, Affidavit, Ex. C, pargs. 29-33; Ex.2, Affidavit, pargs. 30-50).

The first of the two supporting Affidavits was submitted in support of a request for electronic wiretap authority on September 28, 2005 (Exhibit 2, Affidavit;  Tracking No. 04 US00096-G).  The second of the two supporting Affidavits was issued on October 31, 2005 (Exhibit 3, Affidavit,  Tracking No. 04 US00096-G1 ).

The instant Affidavit (Exhibit 1) also references conversations which were allegedly recorded pursuant to the authority of the Wiretap Order issued in Tracking No. 04 US00096-G on September 28, 2005 (Exhibit 2). The conversation which was allegedly recorded between co-defendants Alvino Cornelius and Michael Bracey on October 1, 2005 is transcribed and then interpreted. (Exhibit 1, Affidavit, Exhibit C, pargs. 34-36). A second conversation which allegedly took place between these same individuals on October 5, 2005 is also transcribed and interpreted. (Exhibit 1, Affidavit, Exhibit C, pargs. 37-38). The affiant alleges that both of the above two telephone conversations took place between (313) 215-5940, the target telephone number (Exhibit 1), and another telephone number which is identified only as the "target telephone of the Interception Order cited in paragraph 32 above. . . ." (Exhibit 1, Affidavit, Exhibit C, pargs. 35-37). However, paragraph 32 fails to identify any such target telephone number.

Assuming *arguendo* that the affiant meant to refer to the telephone number which was the subject of the Interception Order cited in paragraph 34 (Ex. 1, Affidavit, Ex. C, parg. 34), then the other telephone number would have been (313) 304-7959. But by the time the instant Application for wiretap authorization was submitted, the phone number referenced in paragraph 34 of Exhibit 1, (313) 304-7959, had been the subject of a wiretap order which had been active for 37 days.. Yet in that entire period of time, the affiant was only able to provide the Court with transcripts of two telephone calls allegedly made between the previous target telephone number of (313) 304-7959. and the requested target telephone number of (313) 215-5940. (Ex.1, Affidavit, Ex. C, pargs. 34-38).

Further, It is readily apparent that the affiant's interpretations of the transcripts of these two telephone conversations are extremely speculative. These conversations are subject to numerous other interpretations, and no factual information is provided to enable the court to determine the credibility and reliability of the affiant's interpretation or translation of these two telephone conversations. There is no specific identifiable reference to illegal drugs in either of these conversations. In addition, both of these conversations took place a month or more before the instant Application for wiretap authority was submitted, and are both therefore stale with respect to the affidant's allegations that the target telephone number is still being used for drug trafficking as of the date the instant Order was requested.

Finally, with respect to the issue of probable cause, the government relied on the alleged Toll Record/Pen Register Analysis. The Affidavit submitted to obtain the Order authorizing electronic surveillance of the target telephone number relied on the results of earlier-authorized Pen Register surveillance of the same telephone number (Exhibit 1, Affidavit, Exhibit C, pargs. 39-40). The Pen Register surveillance was allegedly initiated on September 21, 2005 pursuant to an Order signed

by U.S. Magistrate Judge Steven D. Pepe on September 12, 2005 (Ex. 1, Affidavit, Ex. C, parg. 39). Although it is alleged that this authorization was not signed until September 12, 2005, the Affidavit summarizes the results of pen register surveillance of the target telephone number from March 1, 2005 through October 17, 2005, including the six month period *prior to the issuance of the magistrate's authorization on September 12, 2005* (Exhibit 1, pargs. 39 and 40). Therefore, the Affidavit provided Judge Friedman with information from a Pen Register surveillance which was apparently conducted illegally for six months before the Order authorizing the Pen Register surveillance was even issued. Information obtained through illegal surveillance should be redacted, and the issue of probable cause should be determined without reference to the illegally seized information.

The instant Affidavit (Ex. 1) also alleges that the Pen Register surveillance had disclosed that

the target telephone number, (313) 215-5940, had been used 19 times over a period of almost eight months in a telephone conversation between that number and the number (313) 304-7959, the target telephone number in the earlier Affidavits (Exhibits 2 and 3). In addition, it is alleged that 151 telephone conversations took place between the target telephone number and a number subscribed to by a Nicole Thomas, who is not identifiable in light of the heavily redaction of the document provided to defence counsel. Further, it is alleged that there were 178 telephone conversations over the same eight month period with another unidentified telephone number. (Exhibit 1, Affidavit, Exhibit C, parg. 39).

In addition, it is alleged that over the same approximate eight month period, there were "over three hundred" telephone communications between the target telephone number and the "listed co-conspirators." (Exhibit 1, Affidavit, Exhibit C, parg. 40). However, again, no specific factual

information is provided which would enabled the Judge to evaluate the reliability and credibility of this information. These allegations were simply conclusory statements submitted by the affiant without any factual foundation.

The affiant also alleges in the same paragraph that the attempted to verify telephone contacts between Source One and co-defendant Alvino Cornelius. However there is no allegation with respect to the number of such telephone contacts or the dates on which they allegedly took place. Further, this allegation should be taken into account in context with other information in the same Affidavit, that the most recent telephone communication between Source One and Mr. Cornelius allegedly took place during the week of September 11, 2005, almost two months before the date on which the wiretap Application was submitted. (Exhibit 1, Affidavit, Exhibit C, parg. 30).

The government relies on the above allegations to attempt to establish probable cause. But the allegations contained in this Affidavit purporting to establish the reliability and credibility of Source One and Source Two fall woefully short of constitutional and statutory standards. The alleged "track record" of these informants is insufficient to justify a determination that wiretap authority should be granted based primarily upon their word. The Affidavit fails to establish the credibility and reliability of the informants, and the Judge erred in authorizing the wiretap based upon the unsupported and conclusory statements of the affiant as to the alleged reliability of these informants. Therefore, in assessing the Affidavit in this case, all information attributed to the informants should be disregarded.

Without the allegations of the informants, all that is left is the affiant's speculation as to the meaning of two ambiguous intercepted telephone communications, and reference to the results of an illegally-conducted Pen Register surveillance. Therefore, without the information attributed to the informants, this affidavit clearly failed to establish probable cause; therefore the Motion to

Suppress should be granted.

**E.   The Affidavit submitted to obtain Wiretap Tracking Order No. 04  US00096-P.Failed to Establish the Necessity for Wiretap Authority.**

The Affidavit submitted to obtain the instant wiretap Order (Sealed Ex. 1, Affidavit, Ex. C Paragraphs 41-54), express the affiant's belief that the interception of electronic communications is the only available technique that has a reasonable likelihood of securing the evidence needed to prove beyond a reasonable doubt that the interceptees and others yet unknown are engaged in the criminal activity alleged.   While the affiant's belief is of no particular significance, these paragraphs are, because it is against this stated investigative aim that the need for the wiretap must be measured.   While there may be a need shown here for further investigation, there is hardly anything like probable cause to justify the use of a wiretap, and without such probable cause, a wiretap is not only unnecessary, but otherwise wholly inappropriate.

The Affidavit in this case (Ex. 1, Affidavit, Ex. C, parg. 44), purports to describe the disutility of the use of informants and witnesses to disclose the full nature and extent of illegal activity. However, when the allegations of the affidavit are examined carefully, it is clear that the affiant claims that two of the informants have had direct contact with, and could  offer testimony based upon personal information regarding the targets of the investigation..   The affidavit suggests that other subjects may be involved who are not yet been identified, but who  are or may be involved in the drug trade.   However, reading the "necessity" and probable cause provisions of Title III together makes it clear that a wiretap cannot be justified solely on the basis of the agent's hopes as to such hypothetical figures.

The affiant further alleges that the penetration of the group by an undercover agent has

investigative limitations as well.   (Id., parg 45).  It is alleged that this penetration will not lead to the targets.  This allegation, however, flies directly in the face of the demonstrated fact that the two informants claim to have  deeply and significantly penetrated the criminals operation, and have allegedly furnished the agents with substantial incriminating evidence.  The rest of the affidavit's allegations regarding necessity are really no more than the kind of "boiler plate recitation of the difficulty of gathering usable evidence" which has been repeatedly condemned by the courts. United States v Kerrigan, 514 F.2d 35, 38 (9th Cir. 1975); Rice, supra..

Thus, the affiant belittles the usefulness of telephone toll records on the basis that such records cannot disclose the substance of conversations. (Ex.1, Affidavit, Ex. C, parg. 48). Of course this is true -- but it is always true, and in fact toll records and  pen registers often can and do provide extremely valuable and incriminating  information, especially when used in connection with other investigative techniques.   The affiant also asserts that physical surveillance does not seem to be a useful tool in this investigation.  However, throughout the affidavits there are references to effective surveillance having been conducted by the agents. (Ex.1, Affidavit, Ex. C, pargs. 49; Ex.  2, pargs. 36-39; 42-45).

Similarly, the allegation that search warrants would not be productive (Exhibit 1, Affidavit, Exhibit C, parg.53) is belied by the well-known fact that agents have, in numerous investigations, used search warrants to good effect.  While it is indeed possible for narcotics to be moved, efficient use of the two informants,  and  physical surveillance should obviate that problem.

Then, in Affidavit pargs. 46-47, (Id.) the affiant discounts the utility of interviews or grand jury subpoenas, in language which, when reduced to its simplest terms, appears to suggest that it is the agent's opinion that persons involved in the narcotics trade do not cooperate with the authorities. Suffice it to say, the agent's experience must be substantially different from that of anyone else who

has any experience whatsoever in the criminal justice system.

Most importantly, the stated objectives of the affidavit are objectives that cannot and will not be effectively achieved by the means which are sought: electronic surveillance. The affiant alleges that there is a need to identify other persons involved in the criminal activity being investigated, to learn the drug storage locations in Detroit, as well as the distant sources of supply. However, these facts are peculiarly ill-suited to investigation by wiretap. Many participants in telephone conversations do not identify themselves over the phone, and the agents did not have the requisite familiarity with the voices to permit identifications. The difficulties in establishing the identification of a stranger speaking over a telephone, who is using a street name, and speaking in cryptic phrases, makes wiretapping a peculiarly ineffective and inefficient method for arriving at the identification of others who may be involved in criminal activity.

Additionally, the use of nicknames for persons and places, the use of cryptic comments, the use of vague directions, taken together, all make it highly unlikely that a wiretap will result in the discovery of storage places and sources of supply. The necessary information is simply unlikely to be verbalized over the telephone in a way which can be interpreted by the investigators. Indeed, the most effective ways to discover storage places and sources of supply are exactly those investigative techniques which are referred to in such a disparaging manner by the affiant: use of confidential informants, undercover agents, toll records, pen registers, and physical surveillance.

The congressional requirement of a showing of necessity for the interception is not met by "fungible assertions" such as those which form the heart of the allegations of the instant affidavit. Carr, 4-59. Similarly, it is upon factual allegations, rather than an investigator's conclusions, that a finding of necessity must be premised, since only facts allow the authorizing judge to make an independent determination as to whether other investigative procedures exist as a viable alternative.

16

United States v Kalustian, 529 F.2d supra at 590. In Kalustian the court held an affidavit's showing of necessity insufficient because that affidavit failed to "enlighten us as to why this gambling case presented any investigative problems which were distinguishable in nature or degree from any other gambling case." 429 F.2d supra at 589. The central failing of the Kalustian affidavit was that it failed to demonstrate any meaningful attempts to explore alternative investigative means, but rather sought to justify the proposed wiretap because the "experience" of the investigators made them pessimistic about the prospect of securing detailed knowledge regarding the conspiracy under investigation through other means. While the allegations of the instant affidavit are somewhat more detailed than that in Kalustian, they are no less conclusory, no less "enlightening" and are analytically identical, when carefully analysed, and must be held to be deficient for exactly the same reasons.

Also instructive is the decision of the Second Circuit Court of Appeals in United States v Lilla, 699 F.2d 99 (2nd Cir. 1983). In that case, as in Kalustian, the court found wanting allegations of necessity which were conclusory in nature, and which illogically rejected the use of alternative methods of investigation which were apparently available to the agents.

Obviously, it is not the office of this Court to second guess law enforcement judgment; nor, however, is it this Court's lot to simply accept those judgments unquestioningly. When this Court applies the kind of careful scrutiny which is appropriate to the review of electronic surveillance applications, it can only conclude that this affidavit simply fails to adequately demonstrate the necessity for the kind of electronic surveillance which was in fact authorized. This is not an investigation which was "stalled," and required the extraordinary measure of wiretapping to get moving again; this was a productively ongoing investigation for which wiretapping was at best a luxury. The agents were pursuing fruitful avenues of investigation which should have been allowed

to run their course, or prove unavailing, before wiretapping was resorted to.

With respect to the question of what a proper showing of necessity would consist of, the

Spagnuolo Court wrote:

> Any such showing requires setting forth an adequate factual
> history of the investigation and a description of the criminal
> enterprise sufficient to enable the district judge to determine,
> independently of an agent's assertions with respect to his or other
> agents' experiences that ordinary investigative techniques very
> likely will not succeed or that their use will imperil life or in some
> other specific way be too dangerous.
>  549 F.2d 705, 710 (9th Cir. 1977).

This is precisely what the instant affidavit fails to do,  for all its length and verbiage.

As the Ninth Circuit held in United States v  Carneiro, 861 F.2d 1171, 1176 (9th Cir. 1988),

"Each wiretap application, standing alone, must satisfy the necessity requirement."  (Emphasis in

original).  The repeated use of identical boilerplate language in the subsequent affidavit is, if

anything, even more easily faulted than when it first appeared, since, with each additional period of

interception, the intrusion upon personal privacy represented by the wiretap increases, and the

necessity for observing the statutorily-imposed limits becomes even more clear.

The instant Affidavit (Ex. 1) failed to meet the burden necessary to establish necessity for

electronic surveillance as mandated by 18 USC 2518© and 3©.  Therefore, any fruits of the

electronic surveillance conducted pursuant to the Order issued based upon this Affidavit must be

suppressed.

F.  **The Fruits of the Electronic Surveillance should also be suppressed based on the Failure
to Minimize the Intrusion of the Electronic Surveillance**

Upon information and belief, Defendant Alseddrick West believes that the government

failed to reasonably minimize the intrusion into conversations in violation of the Wiretap Order

and 18 U.S.C. 2518 (5). But the government has failed to provide in discovery with respect to

Tracking Order No.04 US00096-P the records, such as Title III Line Sheets and Progress Reports, showing any efforts to minimize the intrusion of the electronic surveillance of 313-215-5940, as required by Title III . Mr. Alseddrick West is therefore moving separately for discovery of such records. He will provide further briefing on this issue once he has additional facts to present to the court on this issue.

WHEREFORE, Defendant Alseddrick Duwann West respectfully requests that this Honorable Court enter an Order suppressing from the evidence herein the electronic and wire communications so unlawfully intercepted, together with any and all fruits thereof, and any evidence gained through the exploitation of such unlawfully intercepted communications, or, in the alternative, that the Court conduct an Evidentiary Hearing in this matter.

Respectfully submitted,

s/John F. Royal
Co-Counsel for Defendant
615 Griswold Street, Suite 1724
Detroit, MI 48226
Phone: (313) 962-3738
E-mail: johnroyal@ameritech.net
P27800

s/Jennifer Herndon
Co-Counsel for Defendant
224 N. Highway 67, Ste. 122
Florissant, Missouri 63031
Phone: (314) 280-4734
E-mail: jenifer@ix.netcom.com
DATED: July 18, 2008                (Missouri Bar No. 37921)

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**UNITED STATES OF AMERICA**,
             Plaintiff,

vs.                                    Case No. 06-20185-05

**ALSEDDRICK DEWUNN WEST**,        **HON. VICTORIA  ROBERTS**
             Defendant.

_____/

**ELIZABETH A. STAFFORD** (P48866)
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9692


**JOHN F. ROYAL** (P27800)          **JENNIFER HERNDON** (Missouri Bar No. 37921)
Co-counsel for Defendant            Co-counsel for Defendant
The Ford Building                   224 N. Highway 67, Ste. 122
615 Griswold St., Suite 1724        Florissant, Missouri 63031
Detroit, MI 48226                   (314) 280-4734
(313) 962-3738

_____/


### CERTIFICATE OF SERVICE

        I hereby certify that on July 18, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Craig A. Daly, Allison Folmar,  Jennifer Herndon , Richard Kammen, Michael C. Leibson, Richard J. O'Neill, Byron H. Pitts,  Michael O. Sheehan, Leroy T. Soles,  Keith A. Spielfogel, and Elizabeth A. Stafford..

                                    s/John F. Royal_____
                                    615 Griswold Street, Suite 1724
                                    Detroit, MI 48226
                                    Phone: (313) 962-3738
                                    E-mail: johnroyal@ameritech.net
                                    P27800